R.P. PORTER INTERNATIONAL, Inc., Plaintiff

v.

SAMOA ROOFING & SIDING, Inc., Defendant

High Court of American Samoa
Trial Division

CA No. 160-87

February 10, 1988

Before KRUSE, Associate Justice, TAUANU'U, Chief
Associate Judge, and TUIAFONO, Associate Judge.

Counsel: For Plaintiff, Togiola T.A. Tulafono
         For Defendant, Roy J.D. Hall, Jr.

Plaintiff, inter alia, is a supplier of building material and provides equipment for hire to contractors. Defendant is a contractor and was for some time in good standing with plaintiff who afforded defendant an open account facility to charge the purchase of material and the rental of equipment.

At a certain point in time, plaintiff notifies defendant about the account exceeding acceptable credit level and warned defendant that credit would be withheld if payment was not made. Defendant tenders first a check of $7,000.00 and a week later, a further check for $3,000.00. Both checks were drawn on Amerika Samoa Bank, who returned the checks unpaid. After a number of unsuccessful presentment attempts by plaintiff, this action was filed.

Plaintiff's accounting presented to the Court shows an indebtedness of defendant incurred during the month of September 1987 and the first day of October, 1987, to be in the amount $13,419.02.

Defendant contests this asserted liability on two grounds. First defendant complains about an overcharge by plaintiff for ready mixed cement as exceeding firm quotations said to have been supplied by plaintiff to defendant.

We find no merit in this argument which appears to us to be no more than an after-thought to suit. The quotations pointed to by defendant pertained to a specific job at a specific work site in Nu'uuli. According to plaintiff, his charge for ready mix varied with location, and the quote referenced represents his charge for delivery to sites within the immediate location of his plant. At the same time, defendant routinely accepted the September deliveries to his work site in Atu'u, at the rate now complained of, without prior complaint. Finally, the tender by defendant of the checks for payment on account implies acceptance of the account, including the ready mix cement rate.

Defendant further counterclaims an offset for the value of certain subcontracting work rendered by defendant on behalf of plaintiff.

55

Offset value claimed is $9,200.00 prepared by and testified to by defendant's accountant. It became very clear on the evidence that the offset accounting presented to the court for consideration did not reflect actual value of the subcontracting work, but demonstrated an exercise to inflate and maximize an offset in retrospect. Defendant's credibility was far from impressive.

The subcontracting work in issue involved the waterproofing of three elevation shafts. The work required the application of some emulsion and fabric and plaintiff testified that in costing his bid for the main contract, he had allowed approximately $3,000.00 for the waterproofing work. The supervising engineer at the work site had recommended defendant for the work. Despite plaintiff's repeated efforts to obtain a quote from defendant, the latter kept putting the matter off. A billing for $9,208.00 was finally submitted to plaintiff in early November, 1987, while the work, according to plaintiff, remained to be satisfactorily completed. Upon receipt of the bill plaintiff immediately objected and asked defendant for a break down while submitting his own comparative analysis of the man hours, material and mark up for the waterproofing involved. Plaintiff's calculation amounted to $2,300.00.

In reviewing the break down submitted by defendant to the Court, we find that given the area of the three shafts and area of each roll of fabric, the defendant was attempting to charge the project some five times the amount of material needed to apply the shafts with 3 layers of the fabric.

We also find the contingency factor provided in the sum of $2,462.92 as completely unintelligible on testimony given. The accountant alluded to the cost of tools for the job, and when asked about whether it was a normal bidding practice to include capital costs, the witness talked of paint brushes, extension cords (since they worked at night) and even gasoline costs for transporting labor to sites. The witness was far from being self assured in pinning down and properly explaining this contingency factor.

Also on labor costs, an additional item of $925 is added and when questioned on this item, the witness went on to talk about "supervision" costs.

The court is unable on the above to conclude that the billing reasonably reflects a bidding exercise which would approximate reasonable value for the subcontract. To the contrary, the billing is seen as no more than a sorry attempt to provide a breakdown to an over-inflated statement for services.

On the other hand, we find the costing analysis submitted by plaintiff to be more realistic, given plaintiff's bid reservation, and our review of the supplier's actual invoices for the materials sold to the defendant.

We conclude that the sum of $2,330.00 may be properly applied as an offset in defendant's favor.

Plaintiff further seeks exemplary damages on the allegation that defendant had tendered checks for payment on account in order to continue to procure credit. That while so obtaining the benefit of that credit, defendant had instructed his bank to put a stop payment on these checks.

We find the evidence insufficient to establish this claim. While plaintiff had testified that he only received verbal advisement from the bank of a stop payment order, a letter from the bank admitted into evidence cited "insufficient funds" for dishonoring the checks. No other evidence was presented. If a stop payment order was indeed initially given by defendant, the Court feels that this fact could have been open to better proofs given the ready availability of the bank, its officers and records to subpoena.

On the record before us, the Court finds in accordance with the bank's referenced letter of explanation, that the checks in question were returned by the bank for insufficient funds. These circumstances do not warrant exemplary damages.

CONCLUSION

On the foregoing, it is the conclusion of the Court that defendant is indebted to plaintiff in the amount of $13,419.02 to be offset by the amount of $2,300.00. Judgment will accordingly enter in favor of plaintiff, R.P. Porter International, Inc., against defendant, Samoa Siding & Roofing, Inc., in the sum $11,119.02 with interest presumed

57

from October 1, 1987 at the rate of 6% to the date of entry hereof. Plaintiff will further have post judgment interest at the rate of 6% until judgment is satisfied.

It is so ORDERED.